UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

DAWN RILEY,

                    Plaintiff,

vs.                                                          **08-CV-0919S**


HSBC USA, INC., and
HSBC BANK USA, NATIONAL ASSOCIATION,

                    Defendants.

───────────────────────────────

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

I. PRELIMINARY STATEMENT ..................................................................................... 1

II. STATEMENT OF FACTS............................................................................................. 2

III. ARGUMENT ................................................................................................................ 2

SUMMARY JUDGMENT STANDARD.............................................................................. 2

THE BURDEN-SHIFTING STANDARD ............................................................................ 3

POINT I        PLAINTIFF'S *PRIMA FACIE* CASE AND DEFENDANTS'
               LEGITIMATE NONDISCRIMINATORY REASON .............................. 4

       A.      Plaintiff's *Prima Facie* Case....................................................... 4

       B.      Defendants' Legitimate Nondiscriminatory Reason................................... 5

POINT II       NO REASONABLE JURY COULD CONCLUDE THAT
               DEFENDANTS' EXPLANATION FOR TERMINATING
               PLAINTIFF IS BOTH FALSE AND THAT THE REAL
               REASON SHE WAS TERMINATED IS BECAUSE SHE
               IS WHITE .......................................................................................... 5

               1.      Ms. Bartholomew's statements at the CDD employee
                       holiday party .............................................................. 15

               2.      Ms. Bartholomew's statement about being a white
                       grandmother .............................................................. 17

               3.      Ms. Bartholomew's statement about wanting to attend
                       Mr. Walker's church .................................................. 18

               4.      Ms. Bartholomew's comments about Mr. Walker's
                       sweaters .................................................................... 19

               5.      Ms. Bartholomew's pictures ..................................... 20

               6.      Mr. Walker's attendance ........................................... 21

POINT III      DEFENDANT HSBC USA SHOULD BE DISMISSED FROM
               THIS ACTION BECAUSE IT WAS NOT PLAINTIFF'S
               EMPLOYER ..................................................................................... 22

       II. CONCLUSION ...................................................................................... 24

# TABLE OF AUTHORITIES

Page

CASES

*Abdu-Brisson v. Delta Air Lines, Inc.*,
   239 F.3d 456 (2d Cir. 2001)...................................................................................2

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)..........................................3

*Austin v. Ford Models, Inc.*,
   No. 95-cv-3731, 2000 WL 1752966 (S.D.N.Y. Nov. 29, 2000) (Ex. C),
   *aff'd sub nom. Austin v. Smith*, 22 Fed. Appx. 76 (2d Cir. 2001)............................8

*Brennan v. Metropolitan Opera Ass'n, Inc.*,
   192 F.3d 310 (2d Cir. 1999)...................................................................................5

*Bryant v. Maffucci*,
   923 F.2d 979 (2d Cir. 1991)...................................................................................3

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
   243 F.3d 93 (2d Cir. 2001)........................................................................9, 10, 22

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)..........................................2

*Chin v. ABN-AMRO North Amer., Inc.*,
   463 F. Supp.2d 294 (E.D.N.Y. 2006) ....................................................................7

*Chuang v. T.W. Wang Inc.*,
   647 F. Supp.2d 221 (E.D.N.Y. 2009) ................................................................5, 7

*Coleman v. Prudential Relocation*,
   975 F. Supp. 234 (W.D.N.Y.) ............................................................6, 7, 15, 19

*Cronin v. Aetna Life Ins. Co.*,
   46 F. 3d 196 (2d Cir. 1995)...................................................................................3

*Danzer v. Norden Systems, Inc.*,
   151 F.3d 50 (2d Cir. 1998)...................................................................................15

*Deines v. Tex. Dep't of Protective & Regulatory Servs.*,
   164 F.3d 277 (5th Cir.1999) ................................................................................10

*Earvin v. City Univ. of New York*,
   No. 03-cv-9521, 2008 WL 5740359 (S.D.N.Y. Jan. 17, 2008) (Ex. B),
   *aff'd*, 315 Fed. Appx. 358 (2d Cir. 2009) .............................................................7

*Farias v. Instructional Systems, Inc.*,
  259 F.3d 91 (2d Cir. 2001)................................................................................3

*Fisher v. Vassar College*,
  114 F.3d 1332 (2d Cir. 1997) (*en banc*) .................................................4

*Gallo v. Prudential Residential Servs., Ltd. Pshp.*,
  22 F.3d 1219 (2d Cir. 1994)...............................................................2

*Goenaga v. March of Dimes Birth Defects Found.*,
  51 F.3d 14 (2d Cir. 1995) ...................................................................3

*Grady v. Affiliated Cent., Inc.*,
  130 F.3d 553 (2d Cir. 1997)................................................................7

*Gulino v. New York State Educ. Dept.*,
  460 F.3d 361 (2d Cir. 2006)...............................................................22

*Herman v. Blockbuster Entertainment Group*,
  18 F. Supp.2d 304 (S.D.N.Y. 1998 ), *aff'd*, 182 F.3d 899 (2d Cir. 1999)...............................23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed.2d 538 (1986)...........................................2

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973)............................................3

*McLee v. Chrysler Corp.*,
  38 F.3d 67 (2d Cir. 1994) ...................................................................2

*Meiri v. Dacon*,
  759 F.2d 989 (2d Cir. 1985)................................................................2

*Neratko v. Frank*,
  31 F. Supp.2d 270 (W.D.N.Y. 1998) .......................................................8

*Norville v. Staten Island Univ. Hosp.*,
  196 F.3d 89 (2d Cir. 1999)..................................................................4

*Parker v. Baltimore & O.R.R. Co.*,
  652 F.2d 1012 (D.C. Cir. 1981) ............................................................6

*Posner v. Sprint/United Management Co.*,
  478 F. Supp.2d 550 (S.D.N.Y. 2007).....................................................15

*Price Waterhouse v. Hopkins*,
  490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)...........................................15

*Proud v. Stone,*
    945 F.2d 796 (4th Cir. 1991) ................................................................................7

*R.G. Group, Inc. v. Horn & Hardart Co.,*
    751 F.2d 69 (2d Cir. 1984).....................................................................................3

*Ramos v. Marriott Int'l, Inc.,*
    134 F. Supp.2d 328 (S.D.N.Y. 2001).....................................................................8

*Richane v. Fairport Central School Dist.,*
    179 F.Supp.2d 81 (W.D.N.Y. 2001) ..............................................................5, 17

*Ridenour v. Lawson Co.,*
    791 F.2d 52 (6th Cir. 1986) ...................................................................................6

*Scaria v. Rubin,*
    117 F.3d 652 (2d Cir. 1997)..................................................................................22

*Seils v. Rochester City School Dist.,*
    192 F. Supp.2d 100 (W.D.N.Y. 2002) ...................................................................6

*Shumway v. United Parcel Serv., Inc.,*
    118 F.3d 60 (2d Cir. 1997).....................................................................................8

*St. Mary's Honor Ctr. v. Hicks,*
    509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993).......................................4

*Strohmeyer v. Int'l Broth. of Painters,*
    989 F. Supp. 455 (W.D.N.Y. 1977)....................................................................7, 8

*Texas Dep't of Community Affairs v. Burdine,*
    450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981)........................................4

*Tomka v. Seiler Corp.,*
    66 F.3d 1295 (2d Cir. 1995)..................................................................................22

*Viola v. Philips Med. Sys. of N. Am.,*
    42 F.3d 712 (2d Cir. 1994).....................................................................................3

*Wallmar-Rodriguez v. Felix Roma Bakery,*
    No. 05-0111, 2007 WL 1388120 (N.D.N.Y. May 9, 2007).....................................7

*Weinstock v. Columbia Univ.,*
    224 F.3d 33 (2d Cir. 2000).....................................................................................4

*Wernick v. Federal Reserve Bank of New York,*
    91 F.3d 379 (2d Cir. 1996).....................................................................................3

**STATUTES**

N.Y. Exec. Law § 290.................................................................................................................1

N.Y. Exec. Law § 296...............................................................................................................23

Title VII, 42 U.S.C. 2000..............................................................................1, 3, 10, 15, 22, 23

**OTHER AUTHORITIES**

U.S. Const. amend. I ................................................................................................................18

John J. Donohue III & Peter Siegleman, *The Changing Nature of Employment Discrimination Litigation*, 43 Stan.L.Rev. 983, 1017 (1991)....................................................7

## I. **PRELIMINARY STATEMENT**

This is a reverse employment discrimination case that alleges defendants, HSBC USA, Inc. ("HSBC USA") and HSBC Bank USA, N.A. ("HSBC Bank"), violated Title VII, 42 U.S.C. 2000e-5, and the New York Human Rights Law ("HRL"), N.Y. Exec. Law § 290 *et seq*. Plaintiff, who is white, alleges that her supervisor, Linda Bartholomew, discriminated against her because of her race in January 2007 when Ms. Bartholomew decided to terminate plaintiff and retain two African-American co-workers during a reduction-in-force.[1]   No reasonable jury could conclude that defendants' explanation for terminating plaintiff is a pretext and that the real reason she was terminated is because she is white.  Ms. Bartholomew is also white and interviewed and made the decision to hire plaintiff less than two years before she made the decision to terminate plaintiff.  Ms. Bartholomew based her decision to terminate plaintiff on her assessment of plaintiff's performance.  Plaintiff admits that her African-American co-workers were qualified for their positions.  The evidence also shows that she was similarly situated only to her co-worker who held the same position as she did.  The evidence plaintiff presents of racial discriminatory intent consists of stray comments and conduct that are insufficient to raise an inference of race discrimination.

Moreover, plaintiff's claims against defendant HSBC USA should be dismissed for failure to state a claim upon which relief may be granted because plaintiff was not employed by HSBC USA.

Therefore, defendants' motion for summary judgment should be granted in its entirety and the complaint dismissed.

---

[1]     Although the complaint makes reference to a hostile work environment, plaintiff's counsel has stated on the record that plaintiff is not alleging a hostile work environment claim. (Declaration of James R. Grasso [hereinafter "Grasso Dec."] Ex. D [Plaintiff's Deposition hereinafter "Plaintiff Dep."]  p. 70.)

## II. __STATEMENT OF FACTS__

The relevant facts are contained in Defendants' Statement of Undisputed Material Facts submitted herewith.

## III. __ARGUMENT__

## __SUMMARY JUDGMENT STANDARD__

It is well settled that summary judgment is appropriate in discrimination cases as "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). It is now "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001); *accord McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir. 1994).

Summary judgment should be granted when the non-moving party's evidence is either nonexistent or so slight that no rational jury could find in his favor. *Gallo v. Prudential Residential Servs., Ltd. Pshp.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed.2d 538 (1986) (moving party entitled to summary judgment when there is no genuine issue as to any material fact). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265, 274 (1986). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that a trier of fact reasonably could find in his favor. *Id.* at 322-25. The nonmoving party "may not rest upon mere allegations or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue"

- 2 -

of material fact as to each issue upon which he would bear the ultimate burden of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed.2d 202, 217 (1986).  The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to defeat summary judgment.  *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 382 (2d Cir. 1996).  Nor may the non-moving party defeat a motion for summary judgment on the basis of conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *Bryant*, 923 F.2d at 982.  To avoid summary judgment the non-moving party must set forth "concrete particulars" showing that a trial is needed.  *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984).  When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper.  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## THE BURDEN-SHIFTING STANDARD

In the absence of direct evidence of discrimination a plaintiff alleging violation of Title VII may establish a claim of disparate treatment employment discrimination under the three-step burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).[2]  Under this standard, a plaintiff must first establish a *prima facie* case of unlawful employment discrimination.  While the burden to establish a *prima facie* case is modest, it nonetheless has substance.  *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  A *prima facie* case cannot be established with unsupported assertions. *Goenaga*, 51 F.3d at 18.  A plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive.  *Cronin v. Aetna Life Ins. Co.*, 46 F. 3d 196, 204 (2d Cir. 1995).  If plaintiff establishes a *prima facie* case, the burden

---

[2]     Discrimination claims under the HRL are analyzed under the same analytical framework as Title VII.  *Farias v. Instructional Systems, Inc.*, 259 F.3d 91, 98 (2d Cir. 2001).

of production only then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Fisher v. Vassar College*, 114 F.3d 1332, 1335-36 (2d Cir. 1997) (*en banc*). The defendant's burden is not demanding. The defendant need only offer a nondiscriminatory reason for its actions. *Fisher*, 114 F.3d at 1336.

Once the defendant meets its burden of production, the presumption of discrimination arising from the *prima facie* case drops from the picture and the plaintiff must then prove by a preponderance of the evidence that the defendant's articulated reason is both false and a pretext for discrimination. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000); *Fisher*, 114 F.3d at 1339 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752, 125 L. Ed.2d 407 (1993)). "It is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 519. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981).

## POINT I

### PLAINTIFF'S *PRIMA FACIE* CASE AND DEFENDANTS' LEGITIMATE NONDISCRIMINATORY REASON

**A.   Plaintiff's *Prima Facie* Case**

To establish a claim of race discrimination plaintiff must first establish a *prima facie* case of discrimination by demonstrating:  (1) she is a member of a protected class; (2) satisfactory job performance; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Norville v. Staten Island Univ.*

*Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999).  For purposes of this motion, defendants do not contest

that plaintiff can satisfy the requirements for a *prima facie* case.

**B.**     **Defendants' Legitimate Nondiscriminatory Reason**

Defendants contend that HSBC Bank terminated plaintiff as part of a reduction in force

resulting from a transfer of work from the Community Development Department ("CDD") in

Buffalo to Chicago and that plaintiff's supervisor decided to terminate her based on the

supervisor's assessment of plaintiff's performance.  This constitutes a legitimate

nondiscriminatory reason sufficient to shift the burden of persuasion to plaintiff to show that

defendants' explanation is false and that the real reason she was terminated was race

discrimination because she is white.  *See Chuang v. T.W. Wang Inc.*, 647 F. Supp.2d 221, 234

(E.D.N.Y. 2009) (reduction in force is a legitimate non-discriminatory reason); *Richane v.*

*Fairport Central School Dist.*, 179 F.Supp.2d 81, 87-90 (W.D.N.Y. 2001) (an employer's

assessment of an employee's skill level is a legitimate, nondiscriminatory reason for making

employment decision); *accord Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 317 (2d

Cir. 1999).

**POINT II**

**NO REASONABLE JURY COULD CONCLUDE THAT DEFENDANTS'
EXPLANATION FOR TERMINATING PLAINTIFF IS BOTH FALSE AND THAT
THE REAL REASON SHE WAS TERMINATED IS BECAUSE SHE IS WHITE**

To show that defendants' explanation is false and that she was really terminated because

she is white plaintiff faces a high hurdle.  Plaintiff does not challenge the legitimacy of the

decision to transfer work from the CDD in Buffalo to Chicago or the fact that the transfer of

work resulted in the CDD needing one less CRA Product & Mapping Analyst employee.  Thus,

to meet her burden plaintiff must show that her supervisor, Linda Bartholomew, selected her as

the employee to be terminated because of her race.[3]  It is the nature of a reduction in force that employees whose performance would not otherwise result in their termination absent the reduction are discharged because of their performance relative to others.  *See Coleman v. Prudential Relocation*, 975 F. Supp. 234, 240 (W.D.N.Y.) (recognizing that during a reduction in force an employee's relative performance may be a factor in the decision to terminate the employee even though the employee's performance would not result in termination absent the reduction in force).  Because of this fact, it is recognized that an employee terminated as part of a reduction in force "carries a greater burden of supporting charges of discrimination than an employee who was not terminated for similar reasons."  *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986).

In addition, plaintiff faces substantial legal inferences against her claim based on the facts.  Although "reverse" discrimination against a plaintiff because she is white is not impossible, the federal courts recognize that it is indeed the "unusual employer" that discriminates against the majority.  *See Seils v. Rochester City School Dist.*, 192 F. Supp.2d 100, 110 (W.D.N.Y. 2002) (citing *Parker v. Baltimore & O.R.R. Co.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981)).  Plaintiff has not presented any evidence that would indicate that either defendant is the "unusual employer" who discriminates against the majority.

Not only was Ms. Bartholomew the person who made the decision to terminate plaintiff, but she was also the person who interviewed and hired plaintiff for the position of CRA Product & Mapping Analyst less than two years earlier.  (Defendants' Statement of Undisputed Material Facts [hereinafter "Def. St."] ¶¶ 16, 22 and 69.)  Ms. Bartholomew also knew plaintiff before she hired her into the CDD.  (Def. St. ¶ 17.)  As a result, Ms. Bartholomew knew that plaintiff was

---

[3]      Plaintiff alleges that Ms. Bartholomew is the only person who discriminated against her.  (Grasso Dec. Ex. D [Plaintiff Dep.] at.71-72.)

white when she hired her to work in the CDD.  (*See* Def. St. ¶¶ 17 and 20.)  In circumstances such as exist here, where the plaintiff is both hired and fired by the same person in a relatively short time, the same actor inference applies in favor of the defendants and greatly weakens plaintiff's claim.  *Wallmar-Rodriguez v. Felix Roma Bakery*, No. 05-0111, 2007 WL 1388120 at *5-6 (N.D.N.Y. May 9, 2007) (Ex. A).  Existence of the same actor inference significantly diminishes plaintiff's claim because "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."  *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997); *see also Chin v. ABN-AMRO North Amer., Inc.*, 463 F. Supp.2d 294, 308-09 (E.D.N.Y. 2006) (existence of the same actor inference supports an inference of non-discrimination).  "'In short, employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing.'"  *Strohmeyer v. Int'l Broth. of Painters*, 989 F. Supp. 455, 460 (W.D.N.Y. 1977) (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)).  "'It hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.'"  *Coleman*, 975 F. Supp. at 241 (quoting John J. Donohue III & Peter Siegleman, *The Changing Nature of Employment Discrimination Litigation*, 43 Stan.L.Rev. 983, 1017 (1991)).

Moreover, Ms. Bartholomew is also white and, thus, a member of the same protected class as plaintiff.  (Def. St. ¶ 18.)  The fact that Ms. Bartholomew is a member of the same protected class creates an independent inference in defendants' favor that there was no discriminatory motive.  *Earvin v. City Univ. of New York*, No. 03-cv-9521, 2008 WL 5740359 at *6 (S.D.N.Y. Jan. 17, 2008) (Ex. B), *aff'd*, 315 Fed. Appx. 358 (2d Cir. 2009); *Chuang*, 647 F.

Supp.2d at 233.  However, when both the same protected category inference and same actor inference exist the inference that the adverse employment action was not motivated by discrimination is even stronger than would be the case if only one of them applied.  *See Austin v. Ford Models, Inc.*, No. 95-cv-3731, 2000 WL 1752966 at *14 (S.D.N.Y. Nov. 29, 2000) (collecting cases) (Ex. C), *aff'd sub nom. Austin v. Smith*, 22 Fed. Appx. 76 (2d Cir. 2001); *see also Strohmeyer*, 989 F. Supp. at 460 (fact that the person responsible for plaintiff's termination was a member of the same protected group "enhances the inference that age discrimination was not the motive behind plaintiff's termination.") (citation omitted).

Aside from the inferences against discrimination that exist, the facts do not support a finding that Ms. Bartholomew acted with discriminatory intent because plaintiff is white. Plaintiff alleges that Ms. Bartholomew discriminated against her because she retained both Letitia Adams and Joseph Walker who are both African-American.  (Grasso Dec. Ex. D [Plaintiff Dep.] at 71; Def. St. ¶¶ 37 and 46.)  However, plaintiff cannot establish discrimination by comparing herself to Ms. Adams because she was not similarly situated to Ms. Adams.  To show disparate treatment a plaintiff must show that she was treated differently than similarly situated  employees outside the protected category.  *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *Neratko v. Frank*, 31 F. Supp.2d 270, 282-88 (W.D.N.Y. 1998).  To be "similarly situated" means that the person to whom plaintiff compares herself must be similarly situated in "all material respects" to the plaintiff, including holding the same position. *Shumway*, 118 F.3d at 64; *Ramos v. Marriott Int'l, Inc.*, 134 F. Supp.2d 328, 339 (S.D.N.Y. 2001).  Plaintiff bears the burden of showing that the employees to whom she compares herself are similarly situated.  *Shumway*, 118 F.3d at 64.

Here, plaintiff held the position of CRA Product & Mapping Analyst while Ms. Adams held the position of Senior Product & Mapping Analyst.  (Def. St. ¶¶ 21 and 38.)  The positions are different.  Each has its own job description which contains similar yet different duties and responsibilities.  (Declaration of Linda Bartholomew [hereinafter "Bartholomew Dec."] Exs. A and B.)  As explained in Ms. Bartholomew's deposition testimony and her declaration, the Senior CRA Product & Mapping Analyst position is a more technical position than the CRA Product & Mapping Analyst position because it is responsible for programming and maintaining CRA Wiz, the computer application used in the CDD.  (Bartholomew Dec. ¶¶ 10 and 12; Grasso Dec. Ex. E [Deposition of Linda Bartholomew hereinafter "Bartholomew Dep."] at 51.  Plaintiff acknowledges that she did not have the computer abilities that Ms. Adams possessed and could not perform computer programming and trouble shooting duties that Ms. Adams performed.  (Def. St. ¶¶ 33, 41 and 42.)  Thus, plaintiff was not similarly situated to Ms. Adams because they held different positions.  Indeed, when deciding who to terminate Ms. Bartholomew did not consider Ms. Adams as a candidate for termination.  (Grasso Dec. Ex. E [Bartholomew Dep.] at 200; Bartholomew Dec. ¶ 17.)  Accordingly, the retention of Ms. Adams does not support plaintiff's discrimination claim.

The evidence also does not support plaintiff's claim that Ms. Bartholomew discriminated against her when Ms. Bartholomew decided to terminate plaintiff instead of Mr. Walker.  Plaintiff believes that she should have been retained over Mr. Walker because "I just felt that I had more knowledge of the job than he did."  (Grasso Dec. Ex. D [Plaintiff Dep.] at 171.)  Despite plaintiff's belief that she was better qualified than Mr. Walker, as a matter of law, when making employment decisions, an employer has "unfettered discretion to choose among qualified candidates."  *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir.

2001).  The Second Circuit set forth in *Byrnie* the standard that a plaintiff seeking to avoid

summary judgment on the basis of a discrepancy in qualifications must meet when it stated:

> When a plaintiff seeks to prevent summary judgment on the
> strength of a discrepancy in qualifications ignored by an employer,
> that discrepancy must bear the entire burden of allowing a
> reasonable trier of fact to not only conclude the employer's
> explanation was pretextual, but that the pretext served to mask
> unlawful discrimination. In effect, the plaintiff's credentials would
> have to be so superior to the credentials of the person selected for
> the job that "no reasonable person, in the exercise of impartial
> judgment, could have chosen the candidate selected over the
> plaintiff for the job in question." *Deines v. Tex. Dep't of Protective
> & Regulatory Servs.,* 164 F.3d 277, 280-81 (5th Cir.1999); *see also
> Fischbach,* 86 F.3d at 1183 ("Title VII liability cannot rest solely
> upon a judge's determination that an employer misjudged the
> relative qualifications of admittedly qualified candidates.").

Plaintiff cannot show that her qualifications or abilities were so superior to those of Mr.

Walker that no reasonable person could have chosen to retain Mr. Walker over her in the

reduction in force.  It is undisputed that CRA Wiz, the computer software used in the CDD, was

integral to the performance of the CRA Product & Mapping Analyst position.  When questioned

at her deposition about the training she received when she joined the CDD, plaintiff identified

CRA Wiz and said that it "was a big part of the job, because everything that they did was on that

software."  (Grasso Dec. Ex. D [Plaintiff Dep.] at 32-33.)  Mr. Walker confirms in his

declaration that CRA Wiz was so important that 90% or more of his job duties involved using it.

(Declaration of Joseph Walker [hereinafter "Walker Dec."] ¶ 9.)  When Mr. Walker joined the

CDD he already had an Associates of Applied Science degree in computer information systems

and was pursuing a bachelors degree in that field which he obtained in 2008.  (Walker Dec. ¶ 2.)

The highest level of education plaintiff obtained is high school.  (Grasso Dec. Ex. D [Plaintiff

Dep.] at 5.)  The position Mr. Walker held immediately before he joined the CDD was also

computer related and involved performing tasks similar to those performed in the CRA Product

& Mapping Analyst position.  (Walker Dec. ¶¶ 5 and 10.)  Thus, Mr. Walker had more than an adequate background for the position and which, at least on the technical side, was superior to plaintiff's.

Aside from his technical and work background though, most significant is that Mr. Walker was qualified for the CRA Product & Mapping Analyst position and plaintiff acknowledges that fact.  Plaintiff testified as follows regarding Mr. Walker's qualifications:

> Q.	Based on your observations, after you were done training him [Mr. Walker], was he able to do the duties of the job?
>
> A.	Yes.
>
> *	*	*
>
> Q.	Can you explain - - you raise a good point.  Can you tell me, how did you use CRA Wiz in doing your job duties?
>
> A.	I pretty much did all three:  I did the HMDA, . . . I would do the small business file and clean it up, and Joe did - - focused on the maps, but we were supposed to be able to do each other's jobs.
>
> Q.	Was that the case?
>
> A.	That was - -
>
> Q.	Were you all able to do each other's jobs?
>
> A.	We all knew each other's jobs, yes.

(Grasso Dec. Ex. D [Plaintiff Dep.] at 59-60.)  Hence, plaintiff cannot establish that she possessed superior skills, and even assuming that she did, she cannot show that her skills were so superior to those of Mr. Walker that no reasonable person using impartial judgment could have decided to retain Mr. Walker instead of her.

Ms. Bartholomew decided to terminate plaintiff and retain Mr. Walker because she assessed plaintiff's performance in 2006 as being weaker than Mr. Walker's.  (Bartholomew

Dec. ¶¶ 16-22.)  In 2006 Ms. Bartholomew rated plaintiff's overall performance as a 4

(inconsistent performance) on both her mid-year and year-end evaluation, while she rated Mr.

Walker's overall performance a 3 (meets expectations).  (Bartholomew Dec. ¶¶19-20.)

 In plaintiff's 2006 mid-year review Ms. Bartholomew evaluated plaintiff in three areas:

1) Maintain systems supporting HMDA and CRA reporting; 2) Prepare and distribute

performance and Ad-hoc reports; and 3) Demonstrate thorough understanding of the CRA and

HMDA regulation.  (Bartholomew Dec. Ex. C.)  A **"Management Comments"** section follows

each area in which Ms. Bartholomew provides her assessment of plaintiff's performance and a

mid-year rating.  (Bartholomew Dec. Ex. C.)  Ms. Bartholomew rated plaintiff a 3, 4 and 4 in the

three areas, respectively.  (Bartholomew Dec. Ex. C.)  After receiving her 2006 mid-year review

plaintiff responded to Ms. Bartholomew's comments.  Plaintiff's comments in response to her

2006 mid-year review are contained in what became part of her final review and identified as

Exhibit 6 at her deposition.  (Bartholomew Dec. Ex. D; s*ee* Grasso Dec. Ex. E [Plaintiff Dep.] at

125-28 (plaintiff acknowledges that Exhibit 6 identified at her deposition contains her responses

to her mid-year review).)  In her responses to her mid-year review plaintiff acknowledges the

deficiencies that Ms. Bartholomew noted in the two areas in which she was rated a 4.

(Bartholomew Dec. Ex. D p. 2.)  For example, for the area of "Prepare and distribute

performance and Ad-hoc reports" (section 2), Ms. Bartholomew stated in the **Management**

**Comments** section that plaintiff "needs to be more thorough in checking her work for errors

before submitting to management," that "she must be better focused on the detail of her work to

alleviate time consuming rework" and that plaintiff "also needs to lessen her reliance on

colleagues . . . ."  (Bartholomew Dec. Ex. D p. 2.)  Plaintiff responded by stating the following:

> I would agree that I need to be more diligent in my efforts in
> completing monthly reports.  I do need to rely on my colleagues

> when the system is broken or not working properly due to
> programming issues that impact my monthly reporting.

(Bartholomew Dec. Ex. D p. 2.)

In the area of "Demonstrate thorough understanding of the CRA and HMDA regulation" (section 3), Ms. Bartholomew stated in part in the **Management Comments** section that plaintiff "needs to strengthen her knowledge of regulatory/compliance matters as they pertain to the CDD to assist in the evaluation of the effects of regulatory changes." (Bartholomew Dec. Ex. D p. 2.) Plaintiff responded to this comments by stating that: "This has been an ongoing effort for me. I update the Regulation book and read changes that come in on a monthly basis. I was advised by my manager to direct all regulatory questions to her." (Bartholomew Dec. Ex. D p. 2.)

When Ms. Bartholomew completed plaintiff's 2006 year-end review she gave plaintiff ratings of 4, 5 and 4 for each of the three areas, respectively, and an overall rating of 4. (Bartholomew Dec. Ex. D [bates pages P000096-99.) In the **Management Comments** section of each area Ms. Bartholomew explained the reasoning for her assessment. (Bartholomew Dec. Ex. D [bates pages P000096-99.) Ms. Bartholomew's comments on plaintiff's year-end review are consistent with her comments on plaintiff's mid-year review.

Not surprisingly, plaintiff disagreed with her 2006 year-end review. When asked at her deposition why she thought her performance rating should have been different plaintiff stated that she thought she deserved a higher rating because she thought her performance was better than what Ms. Bartholomew rated her. Plaintiff testified on that point as follows:

> Q.    And why do you think it should have been at least a three?
>
> A.    I feel I was doing a good job. I have e-mails that stated I
>       was doing a good job between my mid-year and my year-
>       end review. I trained Joe Walker, I trained Letitia, I was
>       doing a good job for her, and I just feel this is - - it was not
>       a fair assessment of my work performance.

(Grasso Dec. Ex. D [Plaintiff Dep.] at 144.)  Despite plaintiff's feelings about her performance, she acknowledged many of the deficiencies and items that Ms. Bartholomew noted in the year-end review.  For instance, plaintiff acknowledged that that there were typographical errors in at least one report she prepared that caused the report to have to be redistributed and that she made other typographical errors (Grasso Dec. Ex. D [Plaintiff Dep.] at 145-46, 155-56).  She acknowledged that she had been working to improve her CRA Wiz deficiencies (Grasso Dec. Ex. D [Plaintiff Dep.] at 146-47).  She acknowledged that she was unable to field questions or resolve issues with the multi-family database.  (Grasso Dec. Ex. D [Plaintiff Dep.] at 147-48).  Plaintiff also acknowledged Ms. Bartholomew's comments in the year-end review concerning plaintiff's lack of attention to her work, acknowledging that Ms. Bartholomew spoke with her during the year about the need to be more attentive to her work, less concerned about personal matters and her taking excessive cigarette breaks.  (Grasso Dec. Ex. D [Plaintiff Dep.] at 157-58.)

Plaintiff submitted a response to her 2006 year-end review in which she disagreed with Ms. Bartholomew's assessment of her performance and alleged that her poor review was due to race discrimination and for being a smoker, which plaintiff described as being "retaliation for my lifestyle choices."  (Bartholomew Dec. Ex. D [bates page P000092].)

Ms. Bartholomew assessed Mr. Walker's 2006 performance as meeting expectations and accordingly rated him a 3.  (Bartholomew Dec. ¶ 20, Ex. E.)

To meet her burden of proving pretext plaintiff relies on several statements by Ms. Bartholomew and alleged disparate treatment.  However, neither the statements nor the treatment plaintiff cites is sufficient to establish that Ms. Bartholomew's reason for terminating plaintiff is false and that the real reason Ms. Bartholomew terminated plaintiff was because of her race.

Verbal comments "constitute evidence of discriminatory motivation [only] when the plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff."  *Posner v. Sprint/United Management Co.*, 478 F. Supp.2d 550, 557 (S.D.N.Y. 2007) (citing cases).  In determining whether such a nexus exists courts consider the following factors:  (1) who made the remark, *i.e.*, a decisionmaker or non-decisionmaker; (2) when the remark was made in relation to the challenged employment action; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decision-making process of the challenged conduct.  *Id.*  Accordingly, proof of pretext cannot rest upon "statements by decisionmakers unrelated to the decisional process itself . . . ."  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 1804-05, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring); *see also Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) ("Stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination."); *Coleman*, 975 F. Supp. at 243 ("Without some nexus between the comments and the discharge, then, '[e]vidence of a supervisor's occasional or sporadic use of a slur directed at an employee's race, ethnicity, or national origin is generally not enough to support a claim under Title VII.'") (citation omitted).)

Here, an analysis of Ms. Bartholomew's comments that plaintiff alleges are evidence of a discriminatory motive shows that for all of them there is an insufficient nexus between the comments and Ms. Bartholomew's decision to terminate plaintiff because of the reduction in force.

1.    **Ms. Bartholomew's statements at the CDD employee holiday party**

In December 2006, the CDD employees had a holiday party at which all the employees in the department brought in food to share.  (Def. St. ¶¶ 73-74.)  During the party the topic of

reincarnation somehow came up and Ms. Bartholomew made a statement to the effect that she dreamed of black people so that maybe she was a black person in a previous life.  (Grasso Dec. Ex. E [Bartholomew Dep.] at 220-23.)  She also said during the party that she likes black music and listens to radio station WBLK.  (Grasso Dec. Ex. E [Bartholomew Dep.] at 225.)

      Both of these statements constitute stray remarks and are not probative of race discrimination.  Although they were made by Ms. Bartholomew approximately one month before the decision to terminate plaintiff was made, neither relates to the decision-making process that led to plaintiff' termination, but rather were made during an informal discussion on personal topics at a holiday party.  Also, nothing in the content of either remark could lead a reasonable juror to conclude that Ms. Bartholomew harbored a discriminatory animus against whites.  One statement simply recounted a dream Ms. Bartholomew had and the other expressed her music preferences.  No reasonable juror could conclude that Ms. Bartholomew was biased in favor of African Americans and against white because of a dream and her the kind of music she likes.  Rather, the only way such a conclusion could be reached would be to rely on racial stereotypes, which plaintiff amply demonstrated when she testified at her deposition as follows:

      Q.    Well, my question is, what is it about the statement that
              when she said she loved black music that makes you think
              that she was biased in favor of African-Americans?

      A.    Because they're African-Americans, and that's the music
              that they listen to.

(Grasso Dec. Ex. D [Plaintiff Dep.] at 84.)  The absurdity of plaintiff's position regarding Ms. Bartholomew's statements is further shown by her testimony that although she herself sometimes listens to music by African-American music artists that does not mean she is biased in favor of African-Americans over white people.  (Grasso Dec. Ex. D [Plaintiff Dep.] at 85-86.)

Regarding the dream statement, plaintiff admits that simply dreaming about black people does not show that Ms. Bartholomew was biased in favor of African-Americans, but she alleges that the act of Ms. Bartholomew telling others that she had such a dream is evidence of racial animus because plaintiff was in the room at the time and it made her "feel like an outcast." (Grasso Dec. Ex. D [Plaintiff Dep.] at 87-88.)  However, subjective feelings of discrimination are insufficient to satisfy a plaintiff's burden of proving intentional discrimination.  *Richane*, 179 F. Supp.2d at 87 (citing cases).

## 2.     Ms. Bartholomew's statement about being a white grandmother

Another of Ms. Bartholomew's statements that plaintiff cites as evidence that Ms. Bartholomew harbored racial animus toward whites is Ms. Bartholomew's statement that she could be the white grandmother of Ms. Adams's baby.  (Grasso Dec. Ex. D [Plaintiff Dep.] at 78-80.)  This position is also meritless.  Ms. Bartholomew was standing near plaintiff and Ms. Adams while they were discussing the difficulty of raising a child without having any family in the area.  (Grasso Dec. Ex. D [Plaintiff Dep.] at 79-80.)  While they were discussing that issue Ms. Bartholomew joined the conversation and subsequently made the statement.  (Grasso Dec. Ex. D [Plaintiff Dep.] at 79-80.)  This is another stray remark that does not meet plaintiff's burden.  The content of the statement in no way conveys a discriminatory state of mind.  Rather, it is an expression of caring personal support for Ms. Adams at a time when she was expecting a new baby and had no family in the Buffalo area to help her.  The statement is also unrelated to the decision-making process that led to plaintiff's termination.  Ms. Bartholomew's statement could support an inference of racial animus toward plaintiff because she is white using only the most spurious logic.

**3.**     **Ms. Bartholomew's statement about wanting to attend Mr. Walker's church**

At some unknown time plaintiff and Mr. Walker were discussing their respective churches and the differences between the weekly services that they attended.  (Grasso Dec. Ex. D [Plaintiff Dep.] at 95-98.)  While they were having this discussion Ms. Bartholomew joined the conversation and said that she would like to attend Mr. Walker's church.  (Grasso Dec. Ex. D [Plaintiff Dep.] at 97.)  Mr. Walker stated that most of the people who attended his church did not look like her to which Ms. Bartholomew responded that she wanted to go even though she was white.  (Grasso Dec. Ex. D [Plaintiff Dep.] at 97.)  This too is a stray remark which is not indicative of discriminatory intent.

No reasonable juror could infer from the content of Ms. Bartholomew's statement a preference for African-American employees or animus towards white employees.  Plaintiff herself was discussing with Mr. Walker the differences between their church services and expressing an interest in learning about those at Mr. Walker's church when Ms. Bartholomew merely expressed a desire to attend Mr. Walker's church to experience those differences for herself.  To infer racial animus from Ms. Bartholomew's statement would again require a jury to rely on a racial stereotype, namely that someone who wants to attend a service at a predominantly black church must be biased in favor of African-American because "that's the kind of church that they attend."  Using this logic would necessarily mean that former President Bill Clinton and every other white politician who ever attended a service at a predominantly black church while campaigning would also have to be labeled as being racist against whites.  To base a finding of discrimination on the church that a person expressed a desire to attend would be a government imposed sanction based on religious expression and, therefore, also violate the First Amendment's guarantee of religious freedom.  *See U.S. Const. amend. I.*

Similarly, Ms. Bartholomew's statement has no relation to the decision to terminate plaintiff.

### 4.    Ms. Bartholomew's comments about Mr. Walker's sweaters

During the short time that plaintiff and Mr. Walker worked together Ms. Bartholomew sometimes complimented Mr. Walker on the sweaters he wore during cold weather. (Grasso Dec. Ex. D [Plaintiff Dep.] at 72, 108-09.) These comments also are nothing but stray remarks. There is nothing remotely race related in the comments and they are unrelated to the decision to terminate plaintiff. There is no connection between a person's race and fashion sense, unless one relies on racial stereotypes. Thus, Ms. Bartholomew's comments about Mr. Walker's sweaters also do not support a finding of discriminatory intent.

The insufficiency of the above remarks as evidence of discriminatory intent regarding the decision to terminate plaintiff is supported by case law. For example, in *Coleman*, 975 F. Supp. at 242-44, a supervisor who was involved in the ranking process that led to plaintiff's termination made two overtly racist comments about the plaintiff, saying that "That black bitch pissed me off" and "I'm sick of that nigger." The court recognized the offensive nature of these remarks, but concluded that they did not constitute evidence that plaintiff's termination was the result of race discrimination because the comments were made months before the termination decision and were related to a single incident in which the supervisor was angered by the plaintiff's behavior. *Id.* (citing cases). The comments plaintiff cites here were all unrelated to the termination decision and none of them had any explicit or implicit racial content.

In addition to the above comments, plaintiff also alleges that Ms. Bartholomew exhibited a preference for Mr. Walker because he is African-American based on pictures she had in her work area and by not saying anything to Mr. Walker when he was allegedly late to work. (Def. St. ¶¶ 76 and 79.)

5.      **Ms. Bartholomew's pictures**

Plaintiff alleges that Ms. Bartholomew's racial animus towards her because she is white is also shown by Ms. Bartholomew having two pictures thumb tacked on her cubicle wall, one of Ms. Bartholomew and Mr. Walker and one of Ms. Bartholomew and her second-level boss, Loretta Abrams, who is also African-American, that were taken during a business trip. (Grasso Dec. Ex. D [Plaintiff Dep.] at 88-90.) It is simply absurd to claim that having pictures in the workplace of oneself with a co-worker and one's boss shows a preference for African-American employees over white employees merely because of the race of the persons in the pictures. This is especially true given that those were not the only pictures Ms. Bartholomew had in her work area. Ms. Bartholomew also had on her desk a framed photograph of all of the CDD employees, including plaintiff, taken during the same business trip and photographs of her granddaughter, husband, daughter-in-law and dog. (Grasso Dec. Ex. E [Bartholomew Dep.] at 226.) Given the existence of these other pictures in Ms. Bartholomew's office plaintiff's logic would just as easily support the conclusion that she was biased in favor of white people. Plaintiff's own deposition testimony that her having pictures in her work area with only white persons in them and no African-Americans did not make her biased in favor of white persons over African-Americans demonstrates the inanity of her argument regarding Ms. Bartholomew's pictures. Plaintiff testified as follows:

Q.      Did you have any photos in your work area?

A.      Yes.

Q.      Which ones?

A.      My son.

Q.      Any others?

A.      All of my son; . . . .

Q.     About how many?

A.     Five.

Q.     Did you have any pictures of you and any African-Americans in your area?

A.     No.

Q.     Do you think that makes you biased against African-Americans?

A.     No.

(Grasso Dec. Ex. D [Plaintiff Dep.] at 94.) And, of course, the pictures Ms. Bartholomew had in her work area are unrelated to the decision to terminate plaintiff.

**6.     Mr. Walker's attendance**

Plaintiff alleges that Mr. Walker "was consistently late" but that Ms. Bartholomew never said anything to him about it.  (Grasso Dec. Ex. D [Plaintiff Dep.] at 72.)  There is no evidence in the record that Mr. Walker "was consistently late" to work.  The only evidence in the record about Mr. Walker's attendance is his own testimony that he was a minute late to work sometimes.  (Grasso Dec. Ex. G [Deposition of Joseph Walker hereinafter "Walker Dep."] at 69.)  Even if it is assumed that Mr. Walker was "consistently late" and that Ms. Bartholomew did not say anything to him about it, the evidence shows that Ms. Bartholomew treated plaintiff equally favorably regarding her work attendance.  For example, plaintiff testified that:  (1) whenever she had to come in late or leave early for a personal issue, such as to care for her son or attend to her divorce, Ms. Bartholomew never refused her request to do so; (2) Ms. Bartholomew did not make plaintiff use her vacation or personal leave time when she had to leave work for appointments or family obligations; and (3) Ms. Bartholomew accommodated plaintiff's child care obligations by allowing plaintiff to adjust her work schedule so she could

leave work one half hour earlier than her co-workers to pick up her son from day care.  (Grasso Dec. Ex. D [Plaintiff Dep.] at 65-66, 106-08.)  Thus, the evidence does not show that Ms. Bartholomew treated Mr. Walker more favorably than plaintiff regarding attendance at work. Rather, the evidence shows that Ms. Bartholomew went to great lengths to accommodate plaintiff's attendance.  No reasonable jury could find from such evidence that Ms. Bartholomew's decision to terminate plaintiff was based on her race.

The above analysis shows that plaintiff cannot establish that defendants' explanation for her termination is false and that race discrimination is the real reason for her termination.  Ms. Bartholomew's decision to terminate plaintiff and retain Mr. Walker was not one that no reasonable person exercising impartial judgment could make (*see Byrnie*, 243 F.3d at 103), and the evidence of Ms. Bartholomew's statements and conduct that plaintiff relies on is insufficient to show that Ms. Bartholomew had a discriminatory intent.  Thus, defendants' decision to terminate plaintiff was an exercise of business judgment and in such a case the federal courts do not sit as a "super-personnel" department to reexamine an entity's business decisions.  *Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997).  As a result, no reasonable jury could conclude that defendants' explanation for plaintiff's termination is false and that she was terminated because of race discrimination by Ms. Bartholomew towards plaintiff because plaintiff is white.

## POINT III

## DEFENDANT HSBC USA SHOULD BE DISMISSED FROM THIS ACTION BECAUSE IT WAS NOT PLAINTIFF'S EMPLOYER

Relief under Title VII and the HRL is available only against an employer.  42 U.S.C. § 2000e-2(a) (limiting Title VII's prohibition to an employer); *Gulino v. New York State Educ. Dept.*, 460 F.3d 361, 370 (2d Cir. 2006) ("the existence of an employer-employee relationship is a primary element of Title VII claims."); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir.

1995) (Title VII claims limited to employer entities); N.Y. Exec. Law § 296(1)(a) (prohibiting employers from engaging in employment discrimination); *Herman v. Blockbuster Entertainment Group*, 18 F. Supp.2d 304, 313-14 (S.D.N.Y. 1998 )(defendant must be plaintiff's employer to be held liable under HRL), *aff'd*, 182 F.3d 899 (2d Cir. 1999).

      Here, plaintiff alleges that she was employed by both HSBC Bank and HSBC USA. However, the undisputed evidence shows that plaintiff was not an employee of HSBC USA. Darcie J. Oakes, Assistant Corporate Secretary for HSBC USA, states in her declaration submitted in support of this motion that plaintiff has never been an employee of HSBC USA and that HSBC USA does not control or direct the labor and employee relations of HSBC Bank. (Declaration of Darcie J. Oakes ¶¶ 4-5.)  Plaintiff has also admitted that at all relevant times she worked in HSBC Bank's offices in Buffalo, that she was paid by HSBC Bank and that she received all of her fringe benefits from HSBC Bank.  (Grasso Dec. Ex. H [Plaintiff's Responses to Defendants' Requests for Admissions] ¶¶ 4-6.)  Thus, plaintiff cannot present sufficient evidence to establish that she was employed by HSBC USA.  Accordingly, plaintiff's claims against HSBC USA should be dismissed for failure to state a claim upon which relief may be granted.

## II.  **CONCLUSION**

No reasonable jury could conclude that HSBC Bank's explanation for terminating plaintiff is false and that the real reason she was terminated is race discrimination because she is white.  The evidence shows that plaintiff was terminated as part of a reduction in force caused by a transfer of work from Buffalo to Chicago, that her supervisor, Ms. Bartholomew, chose to terminate plaintiff because she determined that plaintiff's performance was not as good as that of plaintiff's co-worker, Joseph Walker, and that Mr. Walker was qualified for the position and his computer skills were superior to plaintiff's.  In addition, the fact that Ms. Bartholomew, who is white, made both the decision to hire and fire plaintiff in less than a two-year period creates a strong inference against discrimination.  Plaintiff's evidence of discrimination relies on nothing more then racial stereotypes and her subjective feelings of discrimination.

Therefore, defendants' motion for summary judgment should be granted in its entirety.

Dated:  April 28, 2010

PHILLIPS LYTLE LLP

By s/ James R. Grasso
   James R. Grasso, Esq.
Attorneys for Defendants
3400 HSBC Center
Buffalo, New York  14203-2887
Telephone No. (716) 847-8400
jgrasso@phillipslytle.com

Doc # 01-2366508.1